UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>ISAAC KATZ | *<br>*<br>*  Chapter 7<br>*<br>*  Case No. 24-44001-JMM<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CREDITOR JORDAN BARDACH'S MOTION FOR THE APPROVAL OF A STIPULATION BETWEEN THE CHAPTER 7 TRUSTEE AND CREDITOR JORDAN BARDACH PERMITTING LIMITED RELIEF FROM THE AUTOMATIC STAY

Creditor Jordan Bardach ("Mr. Bardach") hereby moves this Court to approve the attached stipulation between Mr. Bardach and the Chapter 7 Trustee in this matter, Gregory Messer, (the "Stipulation"), granting limited relief from the automatic stay to permit the adjudication of a Contempt Application pending in Kings County Supreme Court. The Contempt Application seeks an order of civil and criminal contempt against the debtor, Isaac Katz ("Mr. Katz" or the "Debtor"). Mr. Messer, as the Chapter 7 Trustee, consents to the relief sought in the Stipulation, which is identical to the relief sought in this Motion.

**I.  Background**

Mr. Katz commenced an action against Mr. Bardach in Kings County Supreme Court, captioned *Katz v. Bardach*, Index No. 532/2022 (the "Kings County Action"). The Kings County Action relates to disputes arising from the management of City5 Consulting, LLC ("City5"), a company that is co-owned by Mr. Bardach and Mr. Katz, and is, itself a creditor in the instant bankruptcy proceeding. (*See* Dkt. No. 1, at p. 3). The Kings County Action also features counterclaims alleging, among other things, that Mr. Katz breached his fiduciary duties to City5

(and to Mr. Bardach) and misappropriated City5 funds and assets for his personal use. (*See* NYSCEF Nos. 21 & 65).

City5 is a consulting company that provides services to building owners in New York City, interfacing with various New York City municipal agencies on behalf of its clients. City5 employs several employees, both domestic and abroad, who depend on their incomes from City5 to pay day-to-day bills.

On April 27, 2023, the Honorable Reginald A. Boddie entered a preliminary injunction order in the Kings County Action that, among other things, "enjoined [Katz] from making any unilateral withdrawals, transfers, payments, and/or distributions from City5's operating account outside of the ordinary course of business unless mutually agreed to by [Mr. Bardach and Mr. Katz]" (the "Preliminary Injunction") (NYSCEF No. 129). The Preliminary Injunction was clearly intended to maintain the *status quo* between/among Mr. Katz, Mr. Bardach, and City5 and help ensure that City5 could continue its operations until the issues before the Court, including the value of Mr. Bardach's and Mr. Katz's respective interests in City5 and its assets, are resolved on the merits.

In violation of the Preliminary Injunction, Mr. Katz, without Mr. Bardach's knowledge or consent, transferred not less than $207,000 from City5 operating accounts into his personal account.[1] Mr. Katz also transferred $1.2 million dollars from City5's operating accounts to a third party without Mr. Bardach's knowledge or consent. When Mr. Bardach discovered the transfers, he, through his counsel, informed Mr. Katz that the transfers were in direct violation of the Preliminary Injunction and requested that Mr. Katz return the transferred funds and cease all

---

[1] Mr. Katz admitted, under oath, during the November 4, 2024 Bankruptcy Code section 341(a) Meeting of Creditors (the "341 Meeting"), to transferring the $207,000 to a personal bank account, using the money for personal expenses, and inexplicably failing to include this money on his Chapter 7 Petition.

2

further transfers not made in the ordinary course of business. Mr. Katz, undeterred by the notice and his obligations under the Preliminary Injunction, transferred another $300,000 from City5 operating accounts to a third party, again without Mr. Bardach's knowledge or consent. In total, the transfers amounted to more than 98% of City5's operating budget, taking City5's accounts into negative digits and imperiling its ability to meet its payroll and other obligations.

As a result of the foregoing, Mr. Bardach moved for the entry of orders of civil and criminal contempt against Mr. Katz for Mr. Katz's violations of the Preliminary Injunction (the "Contempt Application") (*see* NYSCEF Nos. 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280). The Contempt Application was made returnable on September 26, 2024.

The day before his response was due for the Contempt Application, Mr. Katz commenced this Chapter 7 proceeding. Thus, on the September 26, 2024 return date, Mr. Katz did not file a response (much less opposition) to the Contempt Application; he instead filed a Notice of Bankruptcy and purported to invoke an automatic stay of the Kings County Action, including the criminal portion of the Contempt Application.

Counsel for Mr. Bardach conferred with the Chapter 7 Trustee regarding the nature of the Contempt Application, the facts underlying the application, and the nature of the funds Mr. Katz unlawfully transferred from City5, partially to himself, including that the funds were taken in direct violation of a Preliminary Injunction.

As such, Mr. Bardach and the Chapter 7 Trustee entered into the Stipulation agreeing that: (1) the Chapter 7 Trustee reserves all rights as it pertains to Mr. Katz's bankruptcy estate; (2) Mr. Bardach's position is that pursuant to 11 U.S.C. § 362(b)(1), Mr. Katz's commencement of the instant bankruptcy proceeding does not stay the Kings County Action as to the adjudication

of the portion of the Contempt Application seeking a criminal contempt order; and (3) Limited relief from the automatic stay may be granted to permit the adjudication of the Contempt Application to the extent that it seeks an order of civil contempt against Mr. Katz. The Stipulation is attached hereto as Exhibit A.

Mr. Bardach now moves this Court, with consent of the Chapter 7 Trustee, to so-order the Stipulation, granting Mr. Bardach limited relief from the automatic stay to permit the full adjudication of the Contempt Application in the Kings County Action.

## II.     Jurisdiction

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C.§§ 1408 and 1409.

## III.    Discussion

### A. The Contempt Application Is Not Stayed by the Automatic Stay to the Extent It Seeks a Criminal Contempt Order

The automatic stay does not apply to state court criminal proceedings, including the consideration of criminal contempt charges arising from civil actions. *See In re Newman*, 196 B.R. 700, 704 (Bankr. S.D.N.Y. 1996) ("Criminal cases and proceedings by governmental agencies to enforce police and regulatory powers are exempted from the automatic stay. This exemption includes proceedings to punish a debtor for criminal contempt."); *In re Anoai*, 61 B.R. 918, 922 (Bankr. D. Conn. 1986) ("Neither bankruptcy law nor policy requires or justifies interference with the criminal contempt proceedings of ___***any***___ court when the dignity of its orders is claimed to have been violated," even if the party initiating the proceeding might receive some indirect benefit from the imposition of criminal contempt sanctions against the debtor") (emphasis supplied). "The purpose of criminal contempt is to vindicate offenses against public justice, rather than to enforce the rights of a party, and to compel respect for court orders." *In re*

4

*Newman*, 196 B.R. at 704 (citing *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)).  Kings County Supreme Court has a vested interest in protecting the dignity of its Court and the orders it issues, including the Preliminary Injunction.

Additionally, pursuant to 11 U.S.C. § 362(b)(1), the filing of a bankruptcy petition expressly "does not operate to stay…the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1).  Thus, the portion of the Contempt Application that seeks the adjudication of the request for a criminal contempt order is not and was not stayed by the automatic stay.  However, leave of this Court is being sought here out of deference and respect to this Court and its orders.

### B. To the Extent that the Contempt Application Seeks an Order of Civil Contempt, the Stipulation Should be So-Ordered So That Full Adjudication of the Contempt Application May Proceed

Mr. Bardach, with consent of the Chapter 7 Trustee, seeks entry of the Stipulation, granting limited relief from the automatic stay to permit the adjudication of the Contempt Application to the extent that the Contempt Application seeks an order of *civil* contempt.  Bankruptcy Code Section 362(d)(1) permits relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).  "The burden is on the moving party . . . to make an initial showing of cause [for relief from the stay]." *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 142 (2d Cir. 1999)).  The Second Circuit has observed that "[n]either the statute nor the legislative history defines the term 'for cause.'" *Sonnax Indus., Inc. v. Tri Component Prods. Corp*. (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990).  The Court identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum, as follows:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. "Not all of these factors will be relevant in every case."[2] *Mazzeo*, 167 F.3d at 143. And the Court need not give equal weight to each factor. *Lamarche v. Miles*, 416 B.R. 53, 58 (E.D.N.Y. 2009). Rather, as several courts have noted, "in deciding whether to lift a stay to allow a creditor to continue litigation in another forum, a bankruptcy court should consider the particular circumstances of the case and 'ascertain what is just to the claimants, the debtor and the estate.'" *In re Watkins*, 2005 U.S. Dist. LEXIS 44754 (E.D.N.Y. Aug. 23, 2005) (quoting *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)); *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). *See In re Cole*, 202 B.R. at 361. Each of the *Sonnax* factors weighs in favor of granting the limited relief sought from the automatic stay.

As an initial matter, Mr. Bardach is not seeking, at this time, a complete lifting of the automatic stay, although he maintains that there is cause for such relief. Rather, by this Motion, Mr. Bardach seeks much more limited relief that will aid in the maintenance of the *status quo* in

---

[2] Here, factors 5, 8, 9 and 11 are not relevant to this matter as there is no insurer at issue, the limited relief sought will not result in a judgment – merely an order regarding the propriety of actions taken by the debtor in violation of a Preliminary Injunction, and the limited relief sought does not include relief culminating in a trial, only a Contempt Hearing.

6

the Kings County Action, and seek appropriate relief for his need to seek redress for Mr. Katz's flagrant violation of the Preliminary Injunction.

Second, Mr. Bardach makes this motion with the consent and agreement of the Chapter 7 Trustee, who is entrusted with protecting the Chapter 7 bankruptcy estate. In Paragraph 1 of the Stipulation, Mr. Bardach and the Chapter 7 Trustee stipulate and agree that:

> "Any purported stay arising from Katz's commencement of the Bankruptcy Case (under 11 U.S.C. § 362 or otherwise) of the adjudication of the portion of the Contempt Application in the Kings County Action seeking *inter alia* an order of civil contempt against Katz is hereby lifted, and Bardach may proceed in the Kings County Action as he deems appropriate regarding the Contempt Application."

Ex. A, ¶ 1. Thus, it is not only Mr. Bardach, but also the Chapter 7 Trustee that agrees the limited relief sought by this Motion is warranted. For this reason alone, this Court should grant this Motion and so-order the Stipulation.

Third, the limited relief sought does not involve assets of the Chapter 7 bankruptcy estate, but instead involves assets that were owned by City5 and the subject of a Preliminary Injunction which expressly barred Mr. Katz from transferring those funds, including to himself. Thus, the transferred funds are not and never became part of Mr. Katz's bankruptcy estate, and at best would be the subject of a constructive trust. *See In re Dreier LLP*, 452 B.R. 391, 415 (Bankr. S.D.N.Y. 2011) ("Because the debtor does not own an equitable interest in [the] property…that interest is not 'property of the estate.'"). Additionally, we have agreed to reserve the Chapter 7 Trustee's rights with respect to this issue.

Fourth, without the return of the money that Mr. Katz transferred in violation on the Preliminary Injunction, City5, and thus, Mr. Bardach, will suffer irreparable harm from the imminent and permanent shutting down of City5. Mr. Katz's actions, taken in direct violation of the Preliminary Injunction, have forced City5 to operate on a paycheck-to-paycheck basis,

depending on outstanding money coming in from clients because it no longer has a reserve of money to cover its operating expenses, including payroll.

For these reasons, this Court should grant Mr. Bardach's Motion and So-Order the Stipulation, informing the Kings County Supreme Court that it can proceed with its consideration of the Contempt Application to maintain the *status quo* in the Kings County Action and protect the dignity of its orders without conflicting with this Court's proceedings.

### C. The *Sonnax* Factors Also Weigh in Favor of the Limited Relief Sought

An analysis of the relevant *Sonnax* factors also weighs in favor of the limited relief sought. The first relevant factor is whether relief would result in a partial or complete resolution of the issues. *Sonnax*, 907 F.2d at 1286. Courts have found that where the relief from the stay would "resolve significant open issues in the Debtor's bankruptcy case…this factor weighs in favor of relief from the automatic stay." *In re Simon Taub*, 10-49215, at *8 (Oct. 8, 2010 E.D.N.Y.) (J. Stong) (holding that where the sought relief would resolve the question of whether certain property either is or is not part of the bankruptcy estate, this factor weighs in favor of relief from the automatic stay).

The funds in question were the subject of the Preliminary Injunction, which expressly forbade Mr. Katz from transferring money from City5 operating accounts anywhere, even to his personal accounts. But despite that plain language of the Preliminary Injunction, Mr. Katz disregarded the Kings County Supreme Court's Order and transferred more than 98% of City5's operating budget where he pleased, including to his personal accounts.

The adjudication of the Contempt Application will definitively determine whether the Debtor was entitled to those funds and simply failed to declare them on his 11th hour Chapter 7 Petition or whether he converted City5 funds for his personal use as he admitted under oath during

8

the November 4 341 Meeting. Thus, relief from the stay would inform the makeup of the bankruptcy estate.

Given the lack of any interference the adjudication of the Contempt Application will have with the bankruptcy proceeding, the second *Sonnax* factor also weighs in favor of relief from the automatic stay. As explained in detail above, and as agreed to in the Stipulation, proceeding with the adjudication of the full Contempt Application will not interfere with the bankruptcy proceeding. The issues at stake in the Contempt Application are (1) the violation of the Kings County Supreme Court's Preliminary Injunction; (2) the transfer of City5 funds to third parties and to Mr. Katz's personal bank accounts in violation of the Preliminary Injunction; and (3) the Kings County Supreme Court's interest in the dignity of its orders.

The Kings County Court's interest in protecting the dignity of its court and the orders it issues, and the adjudication of whether its orders have been flagrantly disregarded or not will not interfere with the bankruptcy estate in any way. While the adjudication of the Contempt Application may establish that the transferred money was not and is not part of the bankruptcy estate, that does not mean relief from the stay will "interfere" with the bankruptcy case. *See In re Simon Taub*, 10-49215, at *9 (holding that even though the cases were connected because the adjudication of the Kings County case would determine aspects of the bankruptcy estate, that did not mean relief from the stay would interfere with the bankruptcy case where the relief sought was limited). In any event, the Stipulation expressly reserves the Chapter 7 Trustee's rights with respect to any such determination. Thus, this factor also weighs strongly in favor of the relief from the stay since here, the relief is limited to resolution of a Contempt Application, not resolution of a trial on the merits.

9

The third *Sonnax* factor plainly weighs in favor of relief from the stay as the underlying case deals with the Debtor as a fiduciary. As the Second Circuit stated in Sonnax, "[g]enerally, proceedings in which the debtor is a fiduciary or which involve the postpetition activities of the debtor need not be stayed since they bear no real relationship to the purpose of the stay which is to protect the debtor and the estate from creditors." *Sonnax*, 907 F.2d at 1286. At the heart of the Kings County Action are Mr. Bardach's counterclaims regarding Mr. Katz's breach of his fiduciary duties to City5. Among other things, Mr. Bardach asserts claims that Mr. Katz was a faithless servant, attempting to take City5 assets and money for himself. Similarly, the Contempt Application alleges the same; not only did Mr. Katz continue to breach his fiduciary duties to City5 by transferring nearly all of the operating funds out of the company – and some directly into his own pockets – but he also, by the same acts, breached a Preliminary Injunction that forbid him doing exactly what he did. Accordingly, this factor, too, weighs heavily in favor of the limited lift of the automatic stay sought by Mr. Bardach.

The fourth factor, regarding whether there is a need for a specialized tribunal to resolve the underlying dispute is slightly besides the point, but, in any event, weighs in favor of the limited relief sought. New York State's Supreme Court has seen fit to create specialized courts with judges who specialize in complex commercial disputes, the Commercial Division. The Debtor filed suit against Mr. Bardach in that Court for this exact reason. However, given the limited nature of the relief sought and the Commercial Division's familiarity with the facts and procedural posture of the suit, the adjudication of the Contempt Application concerning the Preliminary Injunction issued by Kings County Supreme Court, there is no other court that could decide efficiently whether Mr. Katz violated that court's order and what civil or criminal sanctions should be levied to restore the *status quo* and vindicate the court's dignity in ensuring compliance with its own

orders. Thus, not only is the Commercial Division a specialized tribunal, but the Commercial Division is the court whose order was flagrantly violated and who has the most interest in ensuring compliance with its orders. This factor necessarily weighs in favor of the limited relief sought.

The sixth factor, whether the action primarily involves third parties, again, weighs in favor of the relief being sought. The transfers undertaken by Mr. Katz in violation of the Preliminary Injunction have injured Mr. Bardach, City5, and its employees as the transfers have hamstrung City5's ability to continue operations as a going concern, has greatly diminished Mr. Bardach's interest in City5, and has put at issue the dignity of the Kings County Supreme Court and its orders.

The seventh factor, whether litigation in another forum would prejudice the interest of other creditors, has already been addressed above. The property at issue is not property of the Chapter 7 bankruptcy estate and, in any event, the Chapter 7 Trustee's rights are fully reserved. No creditor will be prejudiced where no property of the bankruptcy estate is at interest.

In addition, bankruptcy courts have found that any risk of prejudice to creditors can be limited by limiting the scope of the stay relief. *See In re Cole*, 202 B.R. 356, 359-60 (Bankr. S.D.N.Y. 1996) (finding that the bankruptcy court could limit stay relief to the resolution of the underlying claim and a determination of the amount of the claim while requiring the litigants to return to bankruptcy court to enforce the judgment through the claims allowance process). Here, Mr. Bardach is not seeking the resolution of his counterclaims or even the claims against him. He is merely seeking the adjudication of an application for the imposition of two orders of contempt against the Debtor. Accordingly, given the already narrowly tailored relief sought here, this factor weighs in favor of the limited relief sought.

Factor ten also weighs in favor of the limited relief sought. Under factor ten, courts consider the interests of judicial economy and the expeditious and economical resolution of

11

litigation. Swift resolution of the pending Contempt Application that Mr. Katz conspicuously attempted to avoid by filing the instant Chapter 7 Petition would promote judicial economy, lead to the expeditious and economical restoration of the *status quo* for City5 and Mr. Bardach, maintain City5 for equitable distribution, and permit the Kings County Supreme Court to vindicate the dignity and the efficacy of its orders. This factor weighs heavily in favor of the limited relief sought.

The final relevant factor, factor twelve, asks this Court to balance the impact of the stay on the parties of the Kings County Action and to weigh the balance of harms. Where, as here, Kings County is the only "appropriate forum to determine the issues" presented by the Contempt Application, the stay should be lifted. *See In re Simon Taub*, 10-49215, at \*\*15-16. Mr. Katz's bankruptcy estate will suffer no harm by Mr. Katz being required to answer for his flagrant disregard of the Preliminary Injunction. However, Mr. Bardach, and by extension, City5 and its employees, may suffer irreparable harm if the *status quo* is not restored and the Preliminary Injunction not enforced.

## IV.    <u>Conclusion</u>

For the reasons detailed above, this Court should grant the instant Motion, so-ordering the Stipulation and granting Mr. Bardach limited relief from the automatic stay to the extent he seeks adjudication of the Contempt Application.

Respectfully submitted,

*s/ Trevor Hoffmann*
IVORY L. BISHOP, JR.
ibishop@cozen.com
ELLIOT J. COZ
ecoz@cozen.com
Trevor Hoffmann
thoffmann@cozen.com
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Telephone (212) 908-1229

*ATTORNEYS FOR CREDITOR JORDAN BARDACH*